CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 05, 2024

LAURA A. AUSTIN, CLERK
BY:
            s/A. Beeson
        DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

EUBERT CAIN,                          )
    Plaintiff,                        )     Case No. 7:22-cv-00054
                                      )
v.                                    )
                                      )     By: Michael F. Urbanski
RAJVINDER MANN, M.D., et al.,         )     Chief United States District Judge
    Defendants.                       )

### MEMORANDUM OPINION

Eubert Cain, a former Virginia inmate proceeding pro se, filed this civil action under

42 U.S.C. § 1983, alleging that he received inadequate medical treatment while incarcerated at

Coffeewood Correctional Center ("Coffeewood"), a facility operated by the Virginia

Department of Corrections ("VDOC"). The case is presently before the court on (1) motions

to dismiss filed by defendants Craig Reigel, M.D., ECF No. 39; Gregory Domson, M.D., ECF

No. 36; Maria Connerley, RN,[1] ECF No. 46; and S. Ruiz, ECF No. 30; and (2) Cain's motion

to amend the complaint to add new defendants, ECF No. 34.[2] For the reasons set forth below,

the motions to dismiss are **GRANTED**, and the claims against Dr. Reigel, Dr. Domson,

Connerley, and Ruiz are **DISMISSED**. Additionally, Cain's motion to amend is **GRANTED**,

but the claims against the new defendants are **DISMISSED** pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

---

[1] Connerley is incorrectly identified in the complaint as Maria Connelly. The Clerk is directed to update the docket to reflect the correct spelling of this defendant's last name.

[2] The pending motions are currently referred to the assigned United States Magistrate Judge, but the court will withdraw the reference and rule on the motions herein. Because the court concludes that oral argument is unnecessary, the court will grant Dr. Reigel's motion for a ruling without a hearing, ECF No. 52.

## Background

### I.  Cain's Complaint and the Accompanying Exhibits

The following summary of the facts is taken from the complaint and the exhibits attached thereto. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.").

In March 2021, Cain saw Dr. Ravinder Mann for complaints of left knee pain. Compl., ECF No. 1, at 14. Cain alleges that his knee was "physically swollen with a lump above the left knee" and that Dr. Mann physically examined the knee and prescribed him a knee brace. Id. Dr. Mann also referred Cain for knee x-rays, which were performed on April 1, 2021. Compl. Ex. 1H, ECF No. 1-1 at 41. The x-rays revealed "no acute fracture or dislocation." Id.

On May 5, 2021, Cain submitted a written request to see the prison doctor. Compl. Ex. 2A1, ECF No. 1-1 at 42. He reported that his knee was "getting worse" and that he could "not keep taking these pain pills." Id. In response, a nurse noted that Cain had been scheduled to see the doctor. Id.

On May 13, 2021, Cain saw Maria Connerley and informed her that his knee was not getting any better. Compl. at 15 (citing Compl. Ex. 1F2, ECF No. 1-1 at 37). According to the complaint, Connerley, a registered nurse, served as the health services administrator at Coffeewood. Id. at 3. Connerley noted that a referral for physical therapy was still pending approval and that Cain was scheduled to see the doctor on May 19, 2021. Compl. Ex. 1F2. She advised Cain to rest his knee, apply ice, and use the prescribed knee brace. Id.

Cain saw Dr. Mann on May 19, 2021, and informed her that the prescribed treatment had "not resulted [in] improvement of swelling, pain and overall knee condition and functioning." Compl. at 15. Cain alleges that Dr. Mann examined his knee and referred him for an MRI but made no other changes to the existing treatment regimen. Id.

Cain saw Dr. Mann again on June 7, 2021, after submitting a request to see the doctor. Id. at 16. Dr. Mann noted that Cain continued to complain of left knee pain. Compl. Ex. 1F3, ECF No. 1-1 at 38. She renewed a prescription for a topical cream and advised Cain that he had been approved for an MRI. Compl. at 16.

One week later, on June 14, 2021, Cain underwent the MRI ordered by Dr. Mann. Compl. Ex. 1A1, ECF No. 1-1 at 5. The MRI report included the following impression:

1.  Complex tear involving the post horn of the medial meniscus.
2.  A 1.2 cm lesion within the lateral tibial plateau metaphysis with imaging characteristics suggestive of a giant cell tumor . . . .
3.  Grade 1 medial collateral ligament sprain.
4.  Tricompartmental degenerative changes with chondrosis as detailed . . . .
5.  Moderate knee joint effusion.
6.  Moderate complex Baker's cyst.

Compl. Ex. 1A2, ECF No. 1-1 at 6–7.

Dr. Mann signed the MRI report on June 25, 2021, and met with Cain to review the report that same day. Compl. at 17. After finding out about the possibility of a "giant cell tumor," Cain began experiencing "mental anguish," in addition to physical pain and discomfort. Id.

On June 25, 2021, Dr. Mann submitted a referral request for a consultative evaluation by an orthopedic surgeon. Id. (citing Compl. Ex. 1B1 & 1B2, ECF No. 1-1 at 8–9). The request

listed the "Urgency Rating" as "Urgent" and included the following "Reason for Referral": "54 [year old] with abnormal findings on MRI for L Knee done for ongoing pain on 06/14. Medial meniscus tear 1.2 cm lesion within tibial plateau metaphysis – suggestive of Giant cell tumor. Medial collateral ligament strain. He needs to consult orthopedist." Id. Dr. Jesus Llanes approved the referral request on June 25, 2021, and Cain was referred to Dr. Craig Reigel with UVA Orthopedics. Id.

Cain saw Dr. Reigel for the first time on July 14, 2021. Compl. at 26. During the consultative evaluation, Dr. Reigel "physically examined the left knee area and reviewed [the] MRI report." Id. He also prescribed a 90-day supply of meloxicam (Mobic) with three refills. Id. (citing Compl. Ex. IB5, ECF No. 1-1 at 12). Cain alleges that Dr. Reigel informed him that the tumor was "nothing to worry about" and that he would schedule Cain for a follow-up appointment in approximately six weeks. Id.

During the first week of August 2021, Cain returned to Dr. Mann with complaints of ongoing pain. Compl. at 18. Dr. Mann reviewed Dr. Reigel's consultative report and advised Cain that he "should continue with ice treatment and pain medication prescribed by Dr. Reigel." Id. Cain alleges that the prescribed treatment regimen provided "no (effective) change." Id.

Cain subsequently received physical therapy through Armor Health ("Armor") on August 30, 2021. Id. at 19. During the appointment, Cain reported that he was still experiencing knee pain and swelling, and that it "fe[lt] like bone on bone." Compl. Ex. 1E1, ECF No. 1-1 at 32. Licensed Physical Therapy Assistant ("LPTA") L. Barksdale provided the following assessment: "[Patient] reported 0/10 pain at end of session and tolerated treatment

4

well . . . . [Patient] feels he is going to need surgery and verbalized understanding of importance of compliance." Id.

On September 2, 2021, Cain submitted an emergency grievance requesting to see Dr. Mann. Compl. at 9. Cain reported that he was "limping around the compound . . . in excruciating pain." Compl. Ex. 3B3, ECF No. 1-1 at 72. In response, a nurse informed Cain that Dr. Mann had ordered him a cane. Id.

On September 9, 2021, Cain had a physical therapy session with Armor LPTA A. Wohlgemuth. Compl. at 20. Wohlgemuth noted that Cain's pain and range of motion had worsened and that he had "met max [rehabilitation] potential." Compl. Ex. 1E2, ECF No. 1-1 at 33–34. Wohlgemuth recommended that Cain receive an "ortho surgeon consult." Id.

Cain returned to UVA Orthopedics on September 29, 2021, for another appointment with Dr. Reigel. Compl. at 27. Cain alleges that Dr. Reigel physically examined his left knee area and "responded to [his] continual questions and concerns regarding the tumor in his left knee and need for corrective surgery by sending him to [the] x-ray department for additional x-rays." Id. at 27–28. After reviewing the x-rays with Cain, Dr. Reigel "referred him to Dr. Gregory Domson with the Orthopedic Oncology Clinic, stating that Dr. Domson was a specialist and would consult [Cain] on the 1.2 cm lesion on the tibia plateau area of [the left] knee." Id. at 28. Dr. Reigel also diagnosed Cain with "[p]rimary osteoarthritis of [the] left knee" for which he prescribed physical therapy. Compl. Ex. 1C3, ECF No. 1-1 at 21.

On October 6, 2021, Cain met with Dr. Mann and requested that he be referred for a biopsy and surgery. Compl. at 22. Cain alleges that Dr. Mann reviewed Dr. Reigel's most recent report and recommended that he remain on the existing treatment plan of ice, pain medication,

and physical therapy, as prescribed by Dr. Reigel. Id. Cain alleges that Dr. Mann "defer[red] to Dr. Reigel . . . for any potential change in treatment." Id.

That same day, Cain filed a written complaint in which he expressed dissatisfaction with Dr. Mann and requested "proper treatment" for his knee issues. Compl. Ex. 1-3A, ECF No. 1-1 at 60. In response, Connerley noted that Cain had been seen by a specialist offsite on September 29, 2021, and that "appropriate referrals to follow up [were] pending." Id.

On October 20, 2021, Cain filed a regular grievance alleging that he had seen Dr. Reigel for a follow-up knee evaluation on September 28, 2021, and that he needed a biopsy and a knee replacement. Compl. Ex. 3A14, ECF No. 1-1 at 67–68. On October 26, 2021, S. Ruiz, the grievance coordinator at Coffeewood, rejected the grievance during the intake process on the basis that it was a request for services. Id.

On October 24, 2021, Cain filed a written complaint alleging that referrals to Dr. Reigel had been "ineffective" and that he needed a "biopsy and surgery." Compl. Ex. 3A10, ECF No. 1-1 at 61. In response, Connerley noted that Dr. Reigel had referred Cain to another specialist and that Cain had an appointment pending. Id. Connerley also noted that Dr. Reigel had diagnosed Cain with arthritis, which she described as a degenerative condition that causes pain, and that no medical doctor had recommended surgery as of that date. Id.

On October 27, 2021, Cain signed a regular grievance alleging that he had spoken to Dr. Mann "on the boulevard" earlier that month regarding his visit with Dr. Reigel and that he had requested to set up an appointment with her to "set a plan of action." Compl. Ex. 3A8, ECF No. 1-1 at 57–58. Cain expressed dissatisfaction with Dr. Mann's response and requested

both a biopsy and a knee replacement. Id. The following day, Ruiz rejected the grievance on the basis that it was a request for services. Id.

On November 5, 2021, Cain submitted a written request for medical services. Compl. Ex. 2A6, ECF No. 1-1 at 47. He reported that his left knee was swollen and that he would like to see the doctor. Id. Cain alleges that he was subsequently examined by a registered nurse in the medical department but that there was "no change in treatment protocol." Compl. at 23.

On November 12, 2021, Cain submitted a request for medical services in which he asked to have a meeting regarding why he had not been scheduled for a biopsy. Compl. Ex. 2A7, ECF No. 1-1 at 48. In response, Connerley noted that Cain had "a specialist appointment pending." Id.

Cain subsequently saw Dr. Gregory Domson at the Orthopedic Oncology Clinic on November 17, 2021. Compl. at 32. Dr. Domson reviewed imaging studies with Cain and informed Cain that he believed that the lesion on Cain's left knee was "benign." Id. Dr. Domson made the same notation in progress notes following the appointment. Compl. Ex 1D4, ECF No. 1-1 at 25. Dr. Domson noted that the area in question was "very well circumscribed"; that it had "no aggressive features whatsoever"; that it was "probably degenerative in nature"; and that it was not likely contributing to Cain's knee pain. Id. Dr. Domson included the following "assessment and plan" in his report:

> I think Mr. Cain can go forward with standard treatment for his knee arthritis. Certainly he would be a candidate for arthroscopy. I think if he were to get a knee replacement, this would not complicate the procedure.
>
> . . . . I will go ahead and see Mr. Cain back again in about a year's time with AP and lateral views of the left knee just to follow this lesion [and] make sure it is not changing in size and character.

7

Compl. Ex. 1D5, ECF No. 1-1 at 26.

Less than a week later, on November 23, 2021, Cain was transported in a wheelchair to the medical unit, where he met with Connerley and Dr. Kamal. Compl. at 24. Cain alleges that Dr. Kamal prescribed a medication and ice treatment for pain and swelling, and that Connerley continued to "defer biopsy and surgery decisions to Dr. Reigel." Id.

On November 24, 2021, a UVA Health System employee faxed Dr. Domson's report to Coffeewood. Compl. at 25. Cain alleges that it is unknown whether Dr. Mann or any other member of the prison medical staff reviewed the report. Id.

On November 30, 2021, Cain submitted an emergency grievance alleging that he had a "cancerous" tumor on his left knee that was "killing" him. Compl. Ex. 3B5, ECF No. 1-1 at 74. He was directed to "put in for sick call" Id.

On December 1, 2021, Cain submitted another emergency grievance alleging that he needed medical attention immediately for his knee. Compl. Ex. 3B6, ECF No. 1-1 at 75. A nurse responded that Cain would be evaluated by a doctor. Id. Cain alleges that "no change of treatment . . . resulted from this grievance." Id.

Cain subsequently filed suit under § 1983 against Dr. Mann, Dr. Reigel, Dr. Domson, Connerley, and Ruiz. Cain claims that he was denied adequate medical treatment in violation of Eighth Amendment, the Fifth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. See Compl. at 7.

## II.    Cain's Motion to Amend

After Cain filed the initial complaint, he submitted a notice of change of address indicating that he had been released from prison. He then filed a motion to amend in which

he seeks to add three entities as defendants: the VDOC, Armor, and VitalCore. Pl.'s Mot. Am., ECF No. 34. Cain alleges that Armor "had the contract [with the VDOC] at the time [his] injury occurred" and that VitalCore "took over the contract after Armor." Id.

## Standard of Review

Dr. Reigel, Dr. Domson, Connerley, and Ruiz have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.[3] To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertions devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and brackets omitted).

Rule 15 provides that a plaintiff may amend a complaint "once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . ." Fed. R. Civ. P. 15(a)(1)(B). "The plaintiff's right to amend once is absolute," and the right applies to amendments seeking to add parties. Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010). Nonetheless, because Cain was previously granted leave to proceed in forma pauperis for purposes of service, see

---

[3] Dr. Mann did not respond to the complaint within the required timeframe and is technically in default. On January 22, 2024, Dr. Mann filed a motion to set aside the default. ECF No. 55. That motion will be addressed separately.

ECF No. 17, any amendments are subject to review under 28 U.S.C. § 1915(e)(2). Pursuant to this provision, the court is authorized to dismiss any pleading that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The same standard that governs motions to dismiss for failure to state a claim under Rule 12(b)(6) governs sua sponte dismissals pursuant to § 1915(e)(2)(B)(ii). De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003).

When a complaint is filed by a plaintiff proceeding pro se, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

<u>Discussion</u>

### I.    Claims against Dr. Reigel, Dr. Domson, Connerley, and Ruiz

Cain seeks relief under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment, the Fifth Amendment, and the Fourteenth Amendment. "Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted). In order for an official to be held liable under § 1983, the plaintiff must affirmatively show that the official "acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)

(internal quotation marks omitted). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" Williamson, 912 F.3d at 171 (quoting Ashcroft, 556 U.S. at 676).

### A.    Eighth Amendment Claims

Cain claims that each of the individual defendants violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official or healthcare provider "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

An Eighth Amendment claim of deliberate indifference has two components. Jackson, 775 F.3d at 178. The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted).

The subjective component requires an inmate to show that a defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." Hixson, 1 F.4th at 302. "That is a higher standard for culpability than mere negligence or even civil recklessness,

and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." <u>Jackson</u>, 775 F.3d at 178. To establish an Eighth Amendment violation, "it is not enough that an official <u>should</u> have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posted by the official's action or inaction." <u>Id.</u>

The United States Court of Appeals for the Fourth Circuit has explained that the mere fact that an inmate received "<u>some</u> treatment" for a condition does not necessarily mean that the inmate received "<u>constitutionally adequate</u> treatment." <u>De'Lonta v. Johnson</u>, 708 F.3d 520, 526 (4th Cir. 2013). Nevertheless, an inmate "does not enjoy a constitutional right to the treatment of his or choice," <u>id.</u>, and a mere "[d]isagreement[] between an inmate and a physician over the inmate's proper medical care . . . fall[s] short of showing deliberate indifference." <u>Jackson</u>, 775 F.3d at 178 (internal quotation marks omitted). Instead, "the treatment given must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Hixson</u>, 1 F.4th at 303 (internal quotation marks omitted).

It is against this backdrop that the court proceeds to evaluate Cain's claims against Dr. Reigel, Dr. Domson, Connerley, and Ruiz.

### 1. Dr. Reigel

Cain claims that Dr. Reigel acted with deliberate indifference by not "provid[ing] adequate medical evaluation and treatment of [his] medical needs per referral" and by "delaying" access to "proper and adequate medical [treatment]." Compl. at 42. With respect to the initial visit with Dr. Reigel on July 14, 2021, Cain acknowledges that Dr. Reigel

"physically examined the left knee area and reviewed [an] MRI report" and that Dr. Reigel "prescribed pain medication" for knee pain. Compl. at 26. Nonetheless, Cain asserts that Dr. Reigel failed to "conduct additional testing on the left knee area," that he failed to provide a proper "treatment plan" or a "definitive evaluation and diagnosis," and that he failed to "fully address" the reasons for which Cain was referred for a consultative examination. Id. at 27. With respect to the follow-up visit on September 29, 2021, Cain acknowledges that Dr. Reigel physically examined the left knee area; that he sent Cain to the x-ray department for additional x-rays; that he referred Cain to Dr. Domson, an orthopedic oncology specialist, for a consult regarding the lesion shown on the MRI; and that Dr. Reigel prescribed physical therapy. Id. at 27–28. Nevertheless, Cain asserts that physical therapy had already proven to be ineffective in resolving his complaints of knee pain and that the new referral to Dr. Domson resulted in further delay in determining the appropriate course of treatment. Id. at 28–29.

The court agrees with Dr. Reigel that Cain's non-conclusory factual allegations fail to plausibly suggest that Dr. Reigel acted with deliberate indifference to his serious medical needs. According to the complaint and the accompanying exhibits, Dr. Reigel physically examined Cain's knee twice within a time span of less than three months, he prescribed pain medication and ordered additional knee x-rays, and he elected to order additional physical therapy and a referral to an orthopedic oncology specialist instead of proceeding directly to surgery. To the extent that Cain claims that Dr. Reigel's "treatment regimen was too conservative, and that [the doctor's] diagnostic and palliative efforts were insufficient, his disagreements with his medical treatment and his allegations of negligence do not state valid claims of deliberate indifference to his serious medical needs." Watson v. Basse, 539 F. App'x 432, 432–33 (5th

Cir. 2013) (collecting cases); see also France v. Sec'y of Prisons, No. 5:21-cv-03320, 2022 WL 5260755, at *3 (E.D.N.C. Oct. 5, 2022) ("Presuming, without deciding, that plaintiff's left knee injury was objectively serious, the defendant medical providers' purported provision of x-rays, Tylenol, a knee brace, and physical therapy do not shock the conscience. The medical provider defendants' alleged failure to earlier provide an MRI or surgical intervention amounts to plaintiff's mere disagreement with his course of medical treatment or, at worse, mistaken medical judgment or negligent medical care.") (citations omitted); Gordon v. Wexford Health Sources, Inc., No. 19-1676, 2020 WL 3488912, at *7 (D. Md. June 26, 2020) ("While Gordon may have disagreed with Dr. Barrera's initial decision to continue conservative, non-surgical treatment in lieu of surgery, disagreement between an inmate patient and his medical provider about the appropriate course of treatment does not support a claim of deliberate indifference."). Indeed, district courts in the Fourth Circuit have "consistently held that deferral of surgery in favor of conservative treatment alone does not amount to deliberate indifference."[4] Alvarez v. Wexford Health Sources, Inc., No. 17-00141, 2020 WL 2526573, at *4 (D. Md. May 18, 2020 (collecting cases); see also Herrara v. Ohai, No. 1:20-cv-00227, 2022 WL 598056, at *17 (E.D. Va. Feb. 28, 2022) (agreeing with this decision and concluding that a physician's decisions to treat the plaintiff with physical therapy and different pain

---

[4] The court also notes that the mere fact that an LPTA had previously determined that Cain had reached maximum rehabilitation potential is insufficient to show that Dr. Reigel acted with deliberate indifference by prescribing medication and additional physical therapy. Cain does not allege that Dr. Reigel had access to the LPTA's report, and even if he did, "a disagreement among reasonable medical professionals is not sufficient to sustain a deliberate indifference claim." Hixson, 1 F.4th at 303; see also White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.").

medications before referring him to surgery did not rise to the level of deliberate indifference").

Similarly, the allegations in Cain's complaint do not plausibly suggest that Dr. Reigel "disregarded an excessive risk to [his] health or safety" by referring him to an orthopedic oncology specialist, Hixson, 1 F.4th at 302, or that this decision was anything other than a medical judgment with which Cain disagrees. "Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing," Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006), and "[q]uestions of medical judgment are not subject to judicial review." Russell v. Sheffer, 528 318, 319 (4th Cir. 1975). To the extent that Cain disagrees with Dr. Reigel's medical judgment, such disagreement "fall[s] short of showing deliberate indifference." Jackson, 775 F.3d at 178.

For these reasons, the court concludes that the complaint fails to state an Eighth Amendment claim of deliberate indifference against Dr. Reigel. Accordingly, Dr. Reigel's motion to dismiss will be granted with respect to this claim.

### 2.    Dr. Domson

Cain's Eighth Amendment claim against Dr. Domson fails for similar reasons. Cain claims that Dr. Domson acted with deliberate indifference by failing to order a biopsy of the lesion on his left knee. See Compl. at 42 (seeking a judgment declaring that "defendant Domson violated plaintiff's Eighth Amendment protection of rights by delaying adequate medical treatment of biopsy of plaintiff's tumor/lesion"). However, Cain acknowledges that Dr. Domson reviewed the relevant imaging studies with him and that Dr. Domson expressed the opinion that the lesion was benign. Id. at 32. Cain also references the portions of Dr.

Domson's progress notes explaining his decision. Id. (citing Compl. Ex. 1D6). As previously noted, Dr. Domson emphasized that the lesion was "very well circumscribed" and that it had "no aggressive features whatsoever." Compl. Ex. 1D6, ECF No. 1-1 at 27. While Cain may not personally "understand nor accept how [a] tumor/lesion can be viewed as benign without [a] biopsy," Compl. at 33, his disagreement with Dr. Domson's medical judgment does not support a claim of deliberate indifference. See Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013) ("[T]he deliberate indifference standard is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'") (quoting Russell, 528 F.2d at 319); see also Estelle v. Gamble, 429 U.S. 97, 107 (1976) (explaining that "the question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" and that the medical decision not to order additional diagnostic testing is, at most, medical malpractice and "does not represent cruel and unusual punishment"). Therefore, Dr. Domson's motion to dismiss will be granted with respect to this claim.

### 3.     Connerley

Cain seeks to hold Connerley liable in her role as a registered nurse and health services administrator at Coffeewood. He claims that "there was a lack of proper escalation of . . . adequate medical treatment . . . resulting in prolonged and unnecessary pain and suffering," and that Connerley violated the Eighth Amendment by "knowingly den[ying], delay[ing], and defer[ring his] request for [a] biopsy." Compl. at 41. He emphasizes that his written requests for a biopsy were "administratively denied" and that Connerley "deferred to Dr. Reigel" when he met with her on November 23, 2021, and again requested a biopsy. Compl. at 30–31.

The court agrees with Connerley that Cain's complaint does not contain sufficient factual matter from which a reasonable inference could be drawn that Connerley actually "knew of and disregarded an excessive risk to [his] health or safety," or that her responses to his requests for a biopsy or other specific forms of medical treatment were "so grossly incompetent, inadequate, or excessive as to shock the conscience." Hixson, 1 F.4th at 302–03. During a ten-month period, Cain saw Dr. Mann multiple times for his complaints of knee pain, he underwent physical therapy at the prison, and he saw two separate specialists, one of whom prescribed pain medication and additional physical therapy and the other of whom opined that Cain's knee lesion was benign and did not require immediate treatment. Courts have recognized that "supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care," Williams v. Limestone Cnty., 198 F. App'x 893, 897 (11th Cir. 2006), and that "nurses may generally defer to instructions given by physicians." Holloway v. Del. Cnty. Sheriff, 700 F.3d 1063, 1075 (7th Cir. 2012). Although "that deference may not be blind or unthinking, particularly if it is apparent that [a] physician's order will likely harm the patient," id., Cain has not alleged facts from which the court could reasonably infer that Connerley knew that deferring to the prison doctors or the outside specialists posed an excessive risk of harm or that any risk was "so obvious [she] must have known." Koon v. North Carolina, 50 F.4th 398, 407 (4th Cir. 2022) (emphasis omitted); see also Jackson, 775 F.3d at 178. Consequently, the Eighth Amendment claim against Connerley must be dismissed.

   **4.**  **Ruiz**

Cain's complaint also fails to state a viable Eighth Amendment claim against Ruiz, the grievance coordinator at Coffeewood. Although Cain lists Ruiz in the case caption, the section describing the defendants' positions, and once in his various requests for relief, his complaint does not set forth any specific facts describing what Ruiz allegedly did or did not do that violated his rights under the Eighth Amendment. To the extent that the attached exhibits indicate that Cain is attempting to hold Ruiz responsible for rejecting certain grievances during the intake process for procedural reasons, he has failed to state a claim upon which relief may be granted. In the grievances, Cain asserted that he had undergone an MRI on his left knee; that Dr Mann and Connerley had referred him to Dr. Reigel at UVA Medical Center; that he was unhappy with the treatment prescribed by Dr. Reigel; and that he wanted a biopsy and a knee replacement. See Compl. Ex. 3A6, ECF No. 1-1 at 53; Compl. Ex. 3A8, ECF No. 1-1 at 59; Compl. Ex. 3A14, ECF No. 1-1 at 67. Importantly, however, Cain does not allege that Ruiz, in her role as grievance coordinator, could dictate treatment plans for inmates or override the decisions made by prison doctors or outside specialists. See Moore v. Herrick, No. 7:21-cv-00472, 2022 WL 4594027, at *9 (W.D. Va. Sept. 29, 2022), aff'd, 2023 WL 3144549 (4th Cir. Apr. 28, 2023) ("Without their having any authority to remedy the problem, [prison officials] cannot be held responsible for a constitutional violation simply for denying a grievance."). And as the Fourth Circuit has observed, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008); see also Gordon, 937 F.3d at 358 (noting that "a nonmedical prison official can generally defer to the decisions of prison medical personnel at the institutional level").

18

In short, the complaint does not plausibly allege that Ruiz had the subjective knowledge required to state to meet the "exacting standard" of deliberate indifference. Jackson, 775 F.3d at 178. Accordingly, the Eighth Amendment claim against Ruiz must be dismissed.

### B.      Fifth Amendment Claims

In addition to asserting claims of inadequate medical treatment in violation of the Eighth Amendment, Cain alleges that his Fifth Amendment "right of due process to life, liberty, happiness, and property . . . . [has] been violated by the lack of adequate medical treatment." Compl. at 7. However, the Due Process Clause of the Fifth Amendment "applies only to federal government or federal actions." Barnes v. City of Omaha, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009) (citing Dusenberry v. United States, 534 U.S. 161, 167 (2002)). Consequently, Cain has no viable claim for relief under § 1983 for alleged violations of the Fifth Amendment.[5]

### C.      Fourteenth Amendment Equal Protection Claims

Cain summarily alleges that the "lack of adequate medical treatment" violated his "right of equal protection" under the Fourteenth Amendment. Compl. at 1. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly

---

[5] The court also notes that because Cain was a convicted inmate during the time period in question, his claims of inadequate medical treatment are governed by the Eighth Amendment, rather than the Due Process Clause of the Fourteenth Amendment. See Stevens v. Holler, 68 F.4th 921, 930 (4th Cir. 2023) (explaining that deliberate indifference to a prisoner's serious medical needs is proscribed by the Eighth Amendment, whereas "a pretrial detainee's claim of constitutionally inadequate medical care is governed by the Fourteenth Amendment").

situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011).

Cain has not alleged facts sufficient to satisfy either element. He does not allege that he was treated differently from others who were similarly situated or that any disparity in treatment resulted from "intentional or purposeful discrimination.' Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Thus, the complaint fails to state a claim for relief under the Equal Protection Clause against any of the defendants.

For these reasons, the court will grant the motions to dismiss filed by Dr. Reigel, Dr. Domson, Connerley, and Ruiz. The claims under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment will be dismissed without prejudice, and the Fifth Amendment claims will be dismissed with prejudice.

## II.     Claims against the VDOC, Armor, and VitalCore

Cain's motion to amend the complaint to add the VDOC, Armor, and VitalCore as defendants will be granted, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Nonetheless, the claims against these defendants are subject to dismissal for failure to state a claim on which relief may be granted.

To the extent that Cain seeks to hold the VDOC liable for alleged constitutional violations under § 1983, the state agency is not a "person" subject to liability under the statute. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials in their official capacities are 'persons' under § 1983"); Va. Office for Prot. & Advocacy v. Reinhard, 405 F.3d 185, 189 (4th Cir. 2005) (agreeing that a state agency "is not a 'person' within the meaning of [§ 1983]"). Additionally, as an arm of the state, the VDOC is

immune from suit in federal court under the Eleventh Amendment. <u>Regents of Univ. of Cal.</u> <u>v. Doe</u>, 519 U.S. 425, 429 (1997). "While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983 . . . does not effect such an abrogation." <u>In re Sec'y of Dep't of Crime Control & Pub.</u> <u>Safety</u>, 7 F.3d 1140, 1149 (4th Cir. 1993). Consequently, Cain has no viable claim for relief under § 1983 against the VDOC.

The complaint also fails to state a plausible claim for relief under § 1983 against Armor and VitalCore, the private corporations that contracted with the VDOC to provide medical services to inmates. It is well settled that "a private corporation is not liable under § 1983 for torts committed by [its agents] when such liability is predicated solely upon a theory of <u>respondeat</u> <u>superior</u>." <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 728 (4th Cir. 1999). "Rather, a private corporation is liable under § 1983 <u>only</u> when an official policy or custom of the corporation causes the alleged deprivation of federal rights." <u>Id.</u>

Cain does not allege that any purported constitutional violation resulted from an official policy or custom of Armor or VitalCore. Nor does he "plead[] factual content that allows the court to draw the reasonable inference" that an official policy or custom contributed the deprivation of a federal constitutional right. <u>Iqbal</u>, 556 U.S. at 678. Accordingly, the complaint fails to state a claim against either private corporation.

<u>Conclusion</u>

For the reasons stated, the motions to dismiss filed by Dr. Reigel, Dr. Domson, Connerley, and Ruiz are **GRANTED**, the plaintiff's motion to amend the complaint to add new defendants is **GRANTED**, and the claims against the new defendants are **DISMISSED**

for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). If Cain believes that he

can remedy any of the pleading deficiencies identified by the court, he may file a motion to

amend, along with a proposed amended complaint, within thirty days. An appropriate order

will be entered.

Entered: March 5, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.03.05 11:59:06
-05'00'

Michael F. Urbanski
Chief United States District Judge

22